and we'll move to the second case on the calendar for today, and that's United States v. Moore. Let me just confirm that counsel is on the line. Mr. Urowitz, do you hear me? Yes, Your Honor. Can you hear me? Yes, I can. And Mr. Longyear? Yes, Your Honor. I'm here. All right. So, Mr. Urowitz, you've reserved two minutes for rebuttal. So, the floor is yours. You get the first three minutes free of interruption. Thank you. May it please the court. I wanted to focus my argument on Moore's ineffective assistance claim. I think all would agree that the Sixth Amendment right to counsel is only worth something if counsel provides competent representation. In this case, counsel failed to do so, and the inadequacies are plain on the record and can be determined by this court on appeal. An obviously important issue for Moore was his career offender determination. As the plea agreement itself recognized at A17, if the career offender guideline did not apply, then Moore's sentencing range was 84 to 105 months, an almost 50 percent reduction in the range ultimately applied by the district court. Here, counsel did enough to obtain a carve-out for this challenge, but then mistakenly withdrew it at sentencing. As demonstrated in Moore's brief on appeal, it was a mistaken constitutionally inadequate representation to withdraw the argument for two reasons. First, under 4B1.1a, in order for Moore to qualify as a career offender, one requirement is that he have two qualifying prior felony convictions. The record reveals three potential felonies that could arguably satisfy that requirement. Those are found at paragraphs 45 and 46 of the PSR. The attempted robbery discussed in paragraph 45 is not disputed, so that's one predicate felony. That leaves either the criminal possession of a weapon, offense, and violation of New York Penal Law 265.03. Moore's brief demonstrated why that conviction fails to qualify as a crime of violence. The government, in its opposition brief, makes no argument to the contrary as to that argument. In other words, what appears from the record, in this case to have been defense counsel's motivation for withdrawing his career from the challenge, has been implicitly conceded by the government to have been mistaken, since the government makes no argument that the offense is a crime of violence. Excuse me, you have one more minute. Thank you. This leaves only Moore's assault conviction. We've advanced two reasons why that conviction was inadequate. First, as two members of this panel held in United States v. Pena, a case completely ignored by the government, Penal Law 120.05, that's New York Penal Law, is a divisible statute, and without the requisite shepherd documents, a PSR's conclusory statement that the conviction was based on a section categorically a crime of violence is an inadequate basis. For a district court to conclude that it is. So based on Pena alone, we contend remand is necessary. But even assuming the PSR is enough to conclude that Moore's assault conviction was otherwise a crime of violence, in this case it was inadequate, based on the plain language of the guidelines as reflected in 4A.1.2.A.2. Under that rule, where a defendant has multiple prior sentences that are treated as a single sentence, as here, you only look to the longer sentence, which in this case is the criminal possession of a weapon. That definition is specifically incorporated into the definitional section, into the career offender guidelines under 4B.1.2.C. The government says, not so fast, application note 3 to 4A.1.2 says not to apply the guidelines in this manner for purposes of the career offender guideline. Rather, you can use either conviction. But the government fails to take into account the Supreme Court's decision in Stimson. They never addressed this in their brief, which held that the commentary cannot contradict the plain language of the guidelines, which is precisely what we have here. So based on either Pena or Stimson, counsel was just simply mistaken in withdrawing his career offender challenge, and it constituted ineffective assistance to counsel. Let's pause there. Thank you. We're past the three-minute mark. We'll give the panel some opportunities to ask questions. Judge Calabresi, do you have any questions for Mr. Urwitz? Yes. I'm glad that you had focused on that rather than on the other arguments in your brief, many of which have been dealt with by other decisions. But shouldn't we hear from counsel and get an explanation, if any, of what he did? Even assuming everything you say isn't the appropriate thing that we do in a case like this, to dismiss it without prejudice and have it be brought in a 2255 so that counsel has a chance to explain, so that we know what is going on. Judge Calabresi, I recognize that that is the general rule. But in this case, there are certain cases, and we cited, for example, the D.C. Circuit's decision in the United States v. Winstead, which is a very analogous circumstance. It also dealt with a career offender challenge. And there, the D.C. Circuit found, based on a Stinson argument, that it found ineffective assistance of counsel, based on the record alone. Here, if you look at the record, I think it's at A71. It's very clear why counsel seemed to have withdrawn his argument. He didn't understand the guidelines as it applies to criminal possession of a weapon. And so I don't know that we need to hear from counsel. And frankly, if it is necessary, I think that all could be done on remand, because we've advocated two grounds why it doesn't apply. But what was the focus before the district court, the government has effectively conceded here. They don't even dispute it. They raise no argument as to why criminal possession of a weapon should be a crime of violence, which was the focus before the district court. So I think this is a unique case. Any other questions from you, Judge Calabresi? No, thank you. Judge Wesley? No, thank you. I guess I, this is Judge Sullivan, I do have a question. You mentioned Stinson. The language of Stinson basically says that the commentary is a binding interpretation of the guidelines so long as it's not plainly erroneous or inconsistent. I mean, it's not clear to me why the sort of points counting system for purposes of assessing the criminal history score is inconsistent with or contradicts a treatment of a crime as a predicate offense for a career offender. You're simply relying on the fact that the career offender guideline references 4A1.2? It's not simply that it references 4A1.2, Judge Sullivan. The point is it provides the definition of how you determine it. The language is very clear. In 4B1.2, this is C, the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of 4A1.1, A, B, or C. That's the only way it gets counted. And when you look at 4A1.2, A, 2, it says for purposes of those reference sections, you only count the longer one. So the guideline commentary is inconsistent with and it falls within the definition of Stinson. The sentencing commission could have reached the same result, but they had to do it by way of guideline, not by way of commentary. I'm sorry to interrupt you. You're saying that where a person got 14 months for theft and 13 months for robbery, the robbery doesn't count as a predicate felony for a career offender? Based on the plain language of the guidelines, yes. All right. I recognize the government has, you know, they make a policy argument, and I think that's implicit in your question, Judge Sullivan. How could that be right? But the point is that's why we have, you know, either the sentencing commission or the legislator to act and to bring about a different result. But the way the guidelines are written now, this is the way it's written. And, you know, sometimes, yes, there may be situations where it reaches kind of an uncognizant result, but that's kind of, that's what the guidelines say. Application note three is crystal clear. It contemplates this exact scenario. I understand that. I'm sorry. Let me just finish. You think that that is directly contradicted by the language of either 4A1.2 or 4B1.2? I think so, Your Honor, because I think that the language of the guideline can't be clearer that you only count the longest sentence. Right. If 4A1.2A2 says for purposes of applying 4A1.1A, B, and C, if prior sentences are treated as a single sentence, use the longest sentence of imprisonment. That definition is specifically incorporated into 4B1.2. It couldn't be clearer, and that's why I think it was necessary. Just to determine what the number of points will be. In other words, right, if it's a single sentence with two underlying crimes, you're going to give it the number of points based on the longer of the two sentences. But the predicate offense provision for a career offender is not really about that. I'm sorry. That same definition is incorporated into the career offender guideline as well. All right. Well, let's see what the government has to say about that. You reserve two minutes for rebuttal. Thank you. From Mr. Longyear. Thank you, Your Honor. May it please the court. My name is Michael Longyear. I'm an assistant United States attorney in the Southern District of New York. I represent the United States in this appeal, as I did in the proceedings below. I will turn to the appellant's challenge to a sentence and can address any questions based on if the court has any of those questions. With respect to Moore's challenge to a sentence, Moore's claims are precluded by the appellate waiver and the plea agreement. The parties agreed that Moore would not challenge any sentence within or below the stipulated guidelines range of 84 to 188 months imprisonment. Here, he received a sentence of 151 months imprisonment. Because Moore's waiver was made knowingly, voluntarily, and competently, and because the district court did not impose the sentence based on any constitutionally impermissible factors, the appellate waiver is enforceable. In accordance with the case law in the circuit, the appellate waiver is enforceable even if the district court committed an error in the guidelines calculation. With respect to Moore's efforts to circumvent the appeal waiver by arguing ineffective assistance of counsel, that should be rejected for two reasons. First, the record clearly shows that he did receive effective assistance. He was originally charged with a firearms count that carried a 30-year mandatory minimum. Counsel negotiated a plea agreement without a mandatory minimum. And even though the court found Moore to be a career offender, the court still sentenced Moore to the low end of the career offender guidelines calculation and credited defense counsel's sentencing submission with respect to Moore's background, which the court referenced in imposing sentence. In addition, this court has definitively ruled that attempted robbery and assault in the second degree under New York law are crimes of violence, thus making Moore a career offender. And second, and this is to Judge Calabresi's point, even if the court were inclined to consider appellant's ineffective assistance claim, it should decline to do so on direct appeal, as that claim is properly brought under a 2255 motion so that the record can be made as counsel's decision. You have one more minute. Thank you. And Judge Sullivan, with respect to the guidelines issue here, again, we think that any challenge to the sentence is precluded by the appeal waiver, but I think the guidelines are crystal clear in this respect. The commentary provides color as to what you should do if there are multiple convictions imposed in a single sentence, that it prevents, the guidelines prevent a bootstrapping of sorts, so that one single sentence cannot result in, say, six, 10, 12 career criminal history points. But it does not give the defendant a free pass, so to speak, for an underlying crime of violence or controlled substance offense. This application that was amended in 2015, because of this argument, the Eighth Circuit and the Sixth Circuit had differing views on how to treat the plain language of the guidelines and amended the commentary and the application notes specifically for this reason, sided with the Sixth Circuit's interpretation that the defendant should not get a free pass on violent or controlled substances underlying offenses. So the government is prepared to rest on its commission and is happy to answer any questions from the court. All right, Judge Calabresi, do you have any questions for Mr. Longyear? No questions. And Judge Wesley? No questions. I guess I just have the one, which is the point made by Mr. Urowitz, which is that ordinarily we would send it back or we would wait for this to come up as a 2255 asserting ineffective assistance because you want to have a fuller record. But this seems to be a straight legal issue, right? Just an interpretation as to whether the guidelines commentary contradicts a guidelines provision. And so if that's all it is, what is the advantage of sending it back? What record would need to be developed? Your Honor, again, I think the challenge to the guidelines calculation, I think, is precluded by the appeal waiver. I think the party specifically negotiated a plea agreement that contemplated a challenge to the career offender guideline. And the defendant was allocated at his plea that if he got a sentence, if he was found to be a career offender and had a sentence below 188 months, he would waive any challenge to the sentence. So I don't think remand would be necessary. I mean, to the extent the court were to find that there may have been ineffective assistance and go to a guidelines calculation, I do think it is a legal question here. And I think the guidelines are crystal clear here and contemplated this exact scenario. But then we ought to address it now if it's a pure legal issue. So I guess I'm not sure what you're saying when you say about the waiver. So, I mean, can he waive ineffective assistance? In other words, he had a waiver that said I'm not going to challenge a sentence within or below this range. And his lawyer then is woefully ineffective in making an argument that was carved out. This is a hypothetical. Woefully ineffective in articulating an argument that he's allowed to make. He just fails on it. You're saying that the waiver prevents an assertion of ineffective assistance related to that? No, Your Honor. I think the waiver does not – the court can reach the ineffective claim and deny it on direct appeal if it finds that it's in any event frivolous based on a pure legal question from the guidelines. I don't even know if I've seen frivolous. But if we can resolve what is a straight legal question now, we should be sending it back or just waiting for it. I don't mean sending it back. I'm not talking about remand. I'm talking about a habeas. That's usually the way it happens. Ineffective assistance gets asserted on the 2255. And here it sounds like that's coming whether on this issue or not. It sounds like there's going to be perhaps other arguments about ineffective assistance that will get asserted. But should we address this guidelines issue now? If the court were to consider it through an ineffective assistance claim, I think the court can consider it now and should consider it now. And I agree that it is a pure legal question and just an application of the guidelines. All right. Any other questions for Mr. Longyear? Hearing none, we'll now go to rebuttal for Mr. Urwitz.  Thank you, Your Honor. So, at A18 of the record, which is the plea agreement, the plea agreement specifically carves out and says that there's no waiver to a claim of ineffective assistance to the counsel, which is precisely what is raised here. And the government seems to suggest that, oh, he got an effective assistance to counsel because, you know, counsel negotiated certain other benefits. But the fact that counsel was effective in some areas but ineffective in other areas doesn't mean that he provided competent representation. But, look, it seems to me by the end, Mr. Longyear was agreeing with you that we can handle this now. I mean, what you argued is there's no reason to wait for this to come up through 2255 because this is a pure legal issue. Is that your view? Yes. It is a pure legal issue, and it is specifically carved out by the plea agreement. And I think this court would – I mean, I think the court should address it now. And, you know, to leave it for 2255, I've had issues like this that are – I've had 2255 that are pending over a year. Thank you. So, it's just – Judge Calabresi. Yeah. My problem is that that issue that the presiding judge raised was not really anything that was focused on in the briefs. You were arguing any number of other things. So, my problem is that that is a straight legal issue which may or may not come up depending on what counsel's explanations are. But I don't really know that that legal issue has been adequately argued. I mean, I hear a debate between you and the government on it, but I wonder if we are ready to decide that issue on the briefings that we've gotten. Judge Calabresi. Yeah. That's my question concern. Judge Calabresi, to the extent that you're saying that this issue wasn't argued in the district court, I think the reason why it wasn't – I think it's very plain from the record why it wasn't argued in the district court. It's because counsel believed mistakenly that the argument was no longer valid because he thought criminal possession of a weapon was a valid predicate felon. The government on this appeal doesn't even contend – doesn't contest Moore's argument that it clearly does not. And I can tell you – I think Judge Calabresi's point is that this guidelines issue is raised, but it's sort of peripheral and it's not really joined. There's not a lot of briefing. Judge Calabresi prefaced his first question by saying, I'm glad you're focused on this because that seems to be the closest call. But there's not – I mean if you look at just the pages and the briefs, there's not a lot on this, right? I think there's – I mean the reason why there's not a lot on it is because I think it's very straightforward. This court held in Penna that assault – you need more – you need Shepard documents to make a determination of whether a conviction for assault is a crime of violence. And as the other one, the argument is laid out very clearly as to why there's a Stinson problem. It's the government that never addressed it, although – because they just rely on the guidelines. And I think it's significant when they say that the guideline was amended in 2015 to specifically address it. They're referring to the Eighth Circuit's decision, United States v. King, where the Eighth Circuit had granted a 2255 based on the plain language of the guideline. Which frankly reinforces the argument that there is a Stinson problem because the plain language of the guideline says what it says, that you don't count in this case the assault conviction. Wouldn't it go the other way if the application note comes after a court has concluded that there's a conflict? The application note then is designed to show, no, there's no conflict. This is just an application note that clarifies the limits of – under 4A1.2. Anyway, none of that has been argued much in these briefs as I think Judge Galbraith has. Yeah, but I have another – I mean, it might very well be that counsel would say, I did not want this issue of law to be decided in a way which was negative. And since I thought that we were getting a good deal anyway, I didn't argue it. And that would be enough for us to say that counsel acted reasonably, if that was counsel's answer, as a strategic matter before we ever get to the legal issue. That's why so often we turn these things back to 2255 because the interplay between strategy and legal decision is complicated. Most respectfully, Judge Galbraith, I don't think in this case that would be an adequate ground to justify counsel. This was something that was specifically focused on a plea agreement. By withdrawing the argument, he got the same sort of negative ruling because now the court just assumed that it was a – he was a clear offender. And then the question is, well, if this was the basis on which Moore took the plea that he was carving this out as a valuable right and then to withdraw it, I don't see how your Honor's explanation could justify that. What I would have just asked the court is, if they're not going to decide this, then rather than send it back for 2255 to remand it for further proceedings to determine what it was, which this court has done in other cases – I believe it's the United States v. Yowery that they sent back – rather than to simply affirm and then require him to bring the 2255, remand it. This way he could have counsel, and the issue could be flushed out. Frankly, I think it's not necessary because it's plain on the record, but if the court is going to do that, I would ask that they consider that avenue. I think I've exceeded my time, so I thank you for – I think you have, Eurowitz, but we're in a generous mood. So anyhow, this was interesting and well-argued, so we will reserve the decision. Thank you, Your Honor. Okay.